NONPROFIT LEGAL SERVICES OF UTAH
Aaron C. Garrett, #12519
Mary Dewey, #15978
623 East 2100 South, Suite B1
Salt Lake City, Utah 84106
Tel: (385) 419-4111
Fax: (801) 401-3504
aaron@nonprofitlegalservices.com
mdewey@nonprofitlegalservices.com
*Attorneys for Plaintiff Tracy Sinkus*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, SOUTHERN REGION OF CENTRAL DIVISION

| | |
|---|---|
| **TRACY SINKUS**,<br><br>          Plaintiff,<br><br>v.<br><br>**SAND HOLLOW RESORT OPERATIONS LLC**, a Utah Limited Liability Company,<br><br>          Defendant. | **COMPLAINT**<br><br>Case No. _____<br><br>Judge _____ |

Plaintiff Tracy Sinkus, by and through undersigned counsel of record, hereby alleges and complains against Defendant Sand Hollow Resort Operations LLC as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Tracy Sinkus ("Ms. Sinkus") is an individual residing in Washington County, Utah.

2. Defendant Sand Hollow Resort Operations LLC ("Sand Hollow") is a Utah limited liability company with a principal place of business in Washington County, Utah.

3. Venue is appropriate under 28 U.S.C. § 1391(b) because Sand Hollow resides within this district and/or because a substantial part of the events or omissions giving rise to the claims occurred within this district.

4. Ms. Sinkus initially filed a charge of discrimination in this matter with the Utah Labor Commission and the Equal Employment Opportunity Commission, the latter of which has issued her a Notice of Right to Sue.  The Notice of Right to Sue was issued on or about January 15, 2020 and timely filed this suit on April 14, 2020, which is within the 90 days requirement.

5. Jurisdiction in this Court is proper as the claims herein arise under Federal law, including Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), as well as supplemental jurisdiction under 28 U.S.C. § 1367.

6. The Court has personal jurisdiction over these parties because the events upon which this Complaint is based took place primarily within Washington County, Utah.

7. Upon information and belief, Sand Hollow employs at least 15 employees and is therefore covered by Title VII.

## GENERAL ALLEGATIONS

8. Ms. Sinkus is a female and is a member of a protected class under Title VII.

9. Ms. Sinkus was employed by Sand Hollow from approximately April 2015 until November 2018 as a server.

10. Throughout all times of her employment, Ms. Sinkus performed admirably all of her assigned duties and otherwise complied with Sand Hollow's employment policies and procedures.

11. In approximately June 2017, Sand Hollow hired Randy Mondragon ("Mr. Mondragon") to work as the cook, in which position he had a supervisory role over Ms. Sinkus.

12. Almost immediately, Mr. Mondragon began his campaign of harassment and intimidation against Ms. Sinkus.

13. Mr. Mondragon sexually harassed and discriminated against Ms. Sinkus on account of her female status on a nearly daily basis when their schedules coincided. She was regularly subject to demeaning conduct, degrading comments, crude sexual innuendo, and other actions by Mr. Mondragon because she is a woman.

14. For example, on one occasion, when Mr. Mondragon was demonstrating how to clean the dishwashing machine, Mr. Mondragon said in a sexual manner while waving his hands something to the effect of: "You have to dig your fingers down into the cracks and crevices here; my fingers are made for cracks and crevices."

15. In another incident, a fellow employee mentioned how barbeque sauce can get hotter as it sits and ferments. Mr. Mondragon then simulated stroking himself and said, 'I'll tell you what gets hotter as it sits."

16. Another time, on a female coworker's birthday, Mr. Mondragon said that he was "thinking of getting her a blow up doll with somebody's name on it."

17. In yet another incident, while staring at her in a sexually inappropriate and aggressive manner, Mr. Mondragon swung a machete back and forth across his body.

18. This is just a sample of the many sexually inappropriate and harassing actions that Mr. Mondragon directed at Ms. Sinkus or perpetuated while she was in his presence.

19. Throughout 2017 and 2018, Ms. Sinkus complained about this conduct to several of her superiors, both verbally and in writing, including to Adam Jasperson ("Mr. Jasperson," the Director of Resort Operations), Brian Karr ("Mr. Karr," the Food and Beverage Manager), and Robert Roche ("Mr. Roche," the Owner).

20. Unfortunately, Sand Hollow did nothing to stop the harassment, and the sexual harassment and discrmination continued unabated.  This was the case even though Ms. Sinkus reported her complaints to the proper managers (first, her direct manager Mr. Karr, and then his manager Mr. Jasperson, and then ultimately to the owner of the company, Mr. Roche) and both verbally and in writing.

21. Throughout Mr. Mondragon's harassing conduct, and in response to her complaints, Ms. Sinkus was told she would have to meet her harasser "half way" if she wanted to maintain her employment.  On other occasions, she was told that "servers are replaceable" but that Mr. Mondragon was not.

22. Ms. Sinkus was further ostracized and her complaints were given short shrift because she did not share in the drug-using and flirtatious culture that existed at Sand Hollow.

23. Rather than correct Mr. Mondragon's conduct, in or about October 2018, Sand Hollow began a campaign to create a paper trail to justify terminating Ms. Sinkus.  This included a false written warning and placing her on probation.

24. This continued through the month of October 2018 and into November 2018, when on or about November 3, 2018. Ms. Sinkus had a meeting with the new Food and Beverage Manager, Dan Drown ("Mr. Drown").

25. Ms. Sinkus told Mr. Drown about her prior harassment complaints and indicated to him that "they are not happy about that." At that time she expressed concern that her employment was about to be terminated because of her complaints.

26. Shortly thereafter, Mr. Drown assigned most if not all Ms. Sinkus's work shifts to another employee, in retaliation for her having provided him with this information.

27. Prior to Mr. Mondragon's hiring, Ms. Sinkus had an excellent work record with Sand Hollow. Indeed, just before she was given a written warning related to her employment and placed on probation, Mr. Karr wrote her a letter of recommendation for her future job search.

28. By failing to stop Mr. Mondragon's harassing conduct even after Ms. Sinkus's many complaints, Sand Hollow endorsed and perpetuated that activity, and is liable to her for it.

29. This incredibly offensive and hostile work environment offended Ms. Sinkus deeply, and caused her intense emotional distress and damage.

30. This hostile work environment also made it difficult for Ms. Sinkus to perform her duties up to her full ability.

31. Ms. Sinkus' termination was causally connected to her complaints about unlawful discrimination, as can be shown by the close proximity between her complaints and termination.

32. Ms. Sinkus has suffered substantial damages as a result of Sand Hollow's illegal conduct, to wit:

    a. She has lost wages from being illegally terminated;

    b. Lost opportunities for advancement, raises, and promotion while at the company;

      c.      Diminished future wages as a result of losing her job and not being able to find subsequent commensurate compensation;

      d.      Front pay;

      e.      Severe emotional distress, and pain and suffering;

      f.      Attorney's fees; and

      g.      Due to the egregious nature of Sand Hollow's conduct, in which it acted with malice and reckless indifference toward Ms. Sinkus, she is entitled to compensatory and punitive damages.

**FIRST CAUSE OF ACTION**
**UNLAWFUL DISCRIMINATION UNDER TITLE VII**

33.    Ms. Sinkus incorporates the preceding paragraphs as if stated verbatim herein.

34.    Ms. Sinkus is a member of a protected class, namely because she is a woman.

35.    Ms. Sinkus suffered an adverse employment action, including that she was terminated from her employment.

36.    Ms. Sinkus's termination was under circumstances that giving rise to discrimination.

37.    Ms. Sinkus has suffered significant damages as a result of this unlawful discrimination, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**UNLAWFUL RETALIATION UNDER TITLE VII**

38.    Ms. Sinkus incorporates the preceding paragraphs as if stated verbatim herein.

39. Ms. Sinkus, by complaining about the discriminatory comments and actions directed at her, engaged in protected opposition to discrimination.

40. Ms. Sinkus suffered an adverse employment action by being terminated.

41. There is a causal connection between Ms. Sinkus's protected opposition and the adverse employment action, including the close temporal proximity between her protected opposition and her termination.

42. Ms. Sinkus has suffered significant damages as a result of this unlawful retaliation, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII

43. Ms. Sinkus incorporates the preceding paragraphs as if stated verbatim herein.

44. Ms. Sinkus is a member of a protected class, namely because she is a woman.

45. Ms. Sinkus was subject to incredibly unwelcome harassment.

46. This harassment was directed at her on the basis of her membership in a protected group.

47. Due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment.

48. Ms. Sinkus subjectively perceived the environment to be harassing, and any reasonable person would have also objectively perceived the conduct to be so severe and pervasive that the workplace is objectively hostile or abusive.

49. Ms. Sinkus has suffered significant damages as a result of this unlawful hostile work environment, in an amount to be proven at trial.

WHEREFORE, Ms. Sinkus prays for relief as follows:

50. On her first three causes of action, for back pay, front pay, reinstatement, special damages, punitive damages, and compensatory damages, in an amount to be proven at trial.

51. On all causes of action, attorney fees, costs of suit, and any other relief the Court deems equitable and warranted under the circumstances.

52. For damages in an amount to be proven at trial, but in no instance less than $300,000.00.

## JURY DEMAND

Ms. Sinkus demands a jury trial on all claims so triable.

DATED this 14th day of April, 2020.

NONPROFIT LEGAL SERVICES OF UTAH


  /s/ Aaron C. Garrett
Aaron C. Garrett
Mary Dewey
*Attorneys for Plaintiff Tracy Sinkus*